UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CIVIL ACTION NO:

IRMA URRUTIA-POTTER,

        Plaintiff,                              JURY TRIAL DEMANDED

v.

HALIFAX STAFFING, INC.,

        Defendants

_____/

**COMPLAINT**

Plaintiff, IRMA URRUTIA-POTTER ("Urrutia-Potter" or "Plaintiff"), brings this action against Defendant, HALIFAX STAFFING, INC. ("Halifax"), and states as follows:

**PRELIMINARY STATEMENT**

1. This action is about a dedicated and experienced board-certified family physician who was terminated by her employer before her scheduled surgery.

2. Plaintiff Irma Urrutia-Potter worked for Halifax Staffing, Inc. ("Halifax") for approximately a year.

3. On June 14, 2022, Dr. Urrutia-Potter was admitted to the Halifax Emergency Department with chest pain.

4. Around this time, Dr. Urrutia-Potter met with Shanie Foster, Director of Physician Services, to express concerns about her deteriorating health and the potentially cancerous tumor in her neck that would require surgery.

1

5. Ms. Foster told Dr. Urrutia-Potter that she was not sure what could be done and scheduled a follow-up meeting on July 7, 2022.

6. On July 7, 2022, Dr. Urrutia-Potter met with Ms. Foster and Matthew Petkus, Vice President of Physician Services, and was told she was being terminated from her position ***without cause***.

7. Noticeably, Ms. Foster started the conversation by telling Dr. Urrutia-Porter that it was a "difficult conversation" and "this may come as a surprise and that you may have questions," but she was providing her with her 90-day termination notice effective that day.

8. The only reason provided to Dr. Urrutia-Porter for the termination was that it was "not a good fit."

9. Halifax's abrupt termination of Dr. Urrutia-Porter on the heels of her disclosing a potentially cancerous tumor and requesting a reasonable accommodation violated the Americans with Disabilities Act ("ADA"), the Family Medical Leave Act ("FMLA") and the Florida Civil Rights Act ("FCRA").

## PARTIES

10. Plaintiff, Irma Urrutia-Potter is a former, full-time employee who worked for Defendant from August 1, 2021 until she was terminated without cause on July 7, 2022.

11. Defendant, Halifax Staffing, Inc. is a foreign limited liability company with its principal place of business located in Volusia County, Florida.

## JURISDICTION AND VENUE

12. The jurisdiction of this Court is invoked pursuant to the FMLA, 29 U.S.C. § 2601 *et seq*. and the ADA, 42 U.S. Code § 12101 *et seq.* As such, the Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

13. This Court has supplemental jurisdiction over Plaintiff's claim arising under the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.01-760.11, pursuant to 28 U.S.C. § 1367, as this claim is so related to Plaintiff's ADA claim that it forms part of the same case or controversy.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

## ADMINISTRATIVE PREREQUISITES

15. On August 25, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), cross-filed with the Florida Commission on Human Relations ("FCHR"), alleging disability discrimination in violation of the ADA and FCRA.

16. On December 6, 2022, Plaintiff was issued a Notice of Right to Sue from the EEOC and timely brings this action within 90 days of the notice.

17. Pursuant to FCRA § 760.11(8), more than 180 days have passed without there being a determination by the FCHR on whether reasonable cause exists on Plaintiff's FCRA claims.

## STATEMENT OF FACTS

18. Dr. Urrutia-Potter has been working in academia and as a physician for nearly 40 years.

19. Dr. Urrutia-Potter completed medical school at Universidad Nacional Autonoma de México, in Mexico City, Mexico and her post-graduate residency training at Cook County Hospital in Chicago.

20. Prior to working at Halifax, Dr. Urrutia-Potter worked as the medical director at Community Health Partnership of Illinois from January 2016 to March 2020 and a staff physician at Tucson Medical Center/TMCONE from April 2020 to June 2021.

21. In June 2021, Dr. Urrutia-Potter entered into a two-year employment agreement with Halifax.

22. In August 2021, Dr. Urrutia-Potter started working at Halifax as a family medicine physician.

23. In September 2021, Dr. Urrutia-Potter was featured in a Halifax video explaining her patient care philosophy and why she chose to practice family medicine.

24. In the video, Dr. Urrutia-Potter explained that she always come to the office with the priority to make a difference in her patient's life and to have her patients leave the office feeling like they were treated with respect.

25. On June 14, 2022, Dr. Urrutia-Potter was admitted to the Halifax Emergency Department with chest pain.

26. Around this time, Dr. Urrutia-Potter met with Shanie Foster, Director of Physician Services, to express concerns about her deteriorating health, and the potentially cancerous tumor in her neck.

27. Dr. Urrutia-Porter had previously shared with Ms. Foster that she is a cancer survivor.

28. During the meeting, Dr. Urrutia-Potter asked about possible options to reduce her hours as an accommodation.

29. Dr. Urrutia-Potter also told Ms. Foster that she had a surgery scheduled on July 12, 2022 to remove the tumor in her neck.

30. Ms. Foster told Dr. Urrutia-Potter that she was not sure what could be done and scheduled a follow-up meeting on July 7, 2022.

31. Dr. Urrutia-Porter also met with Dr. Margaret Crossman, Senior Vice President and Chief Medical Officer, and told Dr. Crossman about her health issues and that she spoke with Ms. Foster about her surgery and reducing her hours as an accommodation.

32. On July 7, 2022, late in the afternoon, Ms. Foster and Matthew Petkus, Vice President of Physician Services, met in-person with Dr. Urrutia-Potter (who believed the purpose of the meeting was to discuss an accommodation).

33. Ms. Foster started the conversation by telling Dr. Urrutia-Porter that it was a "difficult conversation" and "this may come as a surprise and that you may have questions," but she was providing her with her 90-day termination notice effective that day.

34. Dr. Urrutia-Potter's employment agreement required 90-day notice if a termination was without cause.

35. Even though there was a 90-day notice period, Ms. Foster explained that Dr. Urrutia-Potter would be relieved from her duties.

36. The only reason provided to Dr. Urrutia-Potter was that she was "not a good fit," and Ms. Foster refused to elaborate on what that meant.

## FIRST CAUSE OF ACTION
### (Interference (Retaliation) in Violation of the FMLA)
*Against Halifax Staffing, Inc.*

37. Plaintiff repeats, reiterates, and re-alleges the factual allegations set forth in Paragraphs 18 through 36, as though fully set forth herein.

38. At all times relevant herein, Plaintiff was about to be an "eligible employee" within the meaning of the FMLA, meaning that Plaintiff was approaching her one-year anniversary and worked at least 1,250 hours.

39. At all times relevant herein, Halifax was a "covered employer" within the meaning of the FMLA. Halifax employs 50 or more employees during at least 20 calendar weeks over the covered period within a 75-mile radius of Plaintiff's work location.

40. As described above, in July 2021, Plaintiff put Halifax on notice that she may need intermittent FMLA leave for a serious health condition and additional leave if she was diagnosed with cancer.

41. The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

42. The Department of Labor is responsible for enacting regulations to carry out the purpose of the FMLA. 29 U.S.C. § 2654.

43. The Department of Labor's enacting regulations provide that (1) "On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment" 29 C.F.R. § 825.214; and (2) "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions. . . ." 29 C.F.R. § 825.220(c).

44. In enacting these regulations, the Department of Labor took the position that "[a]lthough section 2615(a)(2) of the Act also may be read to bar retaliation (*see* Bryant v. Dollar General Corp., 538 F.3d 394 (6th Cir. 2008)), the Department believes that section 2615(a)(1) provides a clearer statutory basis for § 825.220(c)'s prohibition of discrimination and retaliation." The Family and Medical Leave Act of 1993, 73 Fed. Reg. at 67,934, 67,986 (Nov. 17, 2008).

45. By the actions described above, Halifax interfered with Plaintiff's rights under the FMLA terminating her without cause before she could qualify for continuous or intermittent FMLA leave and using her foreseeable use of FMLA as a negative factor in the decision to terminate her employment.

46. As a direct and proximate result of Halifax's unlawful interference or retaliation in violation of the FMLA, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages, liquidated damages, reasonable attorneys' fees and expenses, and other equitable relief that the Court deems just and proper.

47. In the event that the Court determines that Plaintiff's claim falls under 29 U.S.C. § 2615(a)(2), Plaintiff has alleged that she was terminated because she put Defendants on notice that she may need to take qualifying FMLA leave, including intermittent FMLA leave.

## SECOND CAUSE OF ACTION
### (Disability Discrimination in Violation of the ADA)
*Against Halifax Staffing, Inc.*

48. Plaintiff repeats, reiterates, and re-alleges the factual allegations set forth in Paragraphs 18 through 36, as though fully set forth herein.

49. By the actions described above, among others, Halifax discriminated against Plaintiff because of her actual and/or perceived disability and request for a reasonable accommodation.

50. As a direct and proximate result of Halifax's unlawful discrimination conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, lost wages and benefits and emotional distress for which she is entitled to an award of monetary damages.

51. Halifax's discrimination was intentional or engaged in with malice and/or reckless indifference to Plaintiff's rights for which an award of punitive damages will be sought.

52. Plaintiff also seeks reasonable attorneys' fees and expenses as provided for under the ADA.

### THIRD CAUSE OF ACTION
**(Disability Discrimination in Violation of the FCRA)**
*Against Halifax Staffing, Inc.*

53. Plaintiff repeats, reiterates, and re-alleges the factual allegations set forth in Paragraphs 18 through 36, as though fully set forth herein.

54. By the actions described above, among others, Halifax discriminated against Plaintiff because of her actual and/or perceived disability and request for a reasonable accommodation.

55. As a direct and proximate result of Halifax's unlawful discrimination conduct in violation of the FCRA, Plaintiff has suffered, and continues to suffer, lost wages and benefits and emotional distress for which she is entitled to an award of monetary damages.

56. Halifax's discrimination was intentional or engaged in with malice and/or reckless indifference to Plaintiff's rights for which an award of punitive damages will be sought.

57. Plaintiff also seeks reasonable attorneys' fees and expenses as provided for under the FCRA.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States;

B. An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, an award of back pay and loss of benefits through the date of trial and front pay and future loss of benefits if the equitable remedies of employment, reinstatement and promotion are not feasible;

D. An award of liquidated damages in an amount to be determined at trial;

E. An award of punitive damages in an amount to be determined at trial;

F. Prejudgment interest on all amounts due;

G. An award of Plaintiff's reasonable attorneys' fees and costs; and

H. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: February 10, 2023

Respectfully submitted,

**MORGAN & MORGAN, P.A.**

By: _/s/ Bryan Arbeit_
  Bryan Arbeit, Bar No. 1010329

8151 Peters Rd, 4th Fl.
Plantation, FL 33324
Tel: (954) 694-9610
barbeit@forthepeople.com

*Attorneys for Plaintiff*